**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

PHILIP EDWARDS, M.D.,

      Plaintiff,

          v.

GEISINGER CLINIC,

      Defendant.

CIVIL ACTION No. 3:08-CV-1653

(JUDGE CAPUTO)

## <u>MEMORANDUM</u>

Now before the Court is Defendant Geisinger Clinic's ("Geisinger") Motion to Dismiss Plaintiff's Complaint (Doc. 12).  For the reasons set forth in detail below, the Defendant's motion will be granted in part and denied in part.

The Court has jurisdiction in this matter pursuant to 28 U.S.C. 1332.

## BACKGROUND

On September 4, 2008, the Plaintiff, Dr. Philip Edwards, filed a Complaint (Doc 1) initiating the present action.  In the Complaint, Dr. Edwards alleges the following.

Dr. Philip Edwards is a citizen of the United Kingdom and is a licensed physician specializing in interventional radiology.  (Compl., Doc. 1 ¶¶ 1, 5, 6.)  Dr. Edwards was recruited for employment with the Geisinger Clinic in Danville, Pennsylvania in early 2006.  (*Id.* ¶ 7.)  At the time Dr. Edwards joined Geisinger, he and the chair of the department, Dr. Dominick Conca, discussed and agreed that it was their mutual intent for Dr. Edwards, through his employment with Geisinger, to become eligible for certification by the American Board of Radiology ("ABR").  (*Id.* ¶ 8.)  Certification by the ABR is a prerequisite for many professional and academic appointments in the United States.  (*Id.* ¶ 10.)  Moreover,

Geisinger has a policy requiring all staff physicians hired after January 2002 to become board certified.  (*Id*. ¶ 11.)

In order to satisfy the prerequisites for board certification, Dr. Edwards needs to complete four (4) years of uninterrupted practice in a hospital with an approved residency program.  (*Id*. ¶ 12.)  Since Geisinger was in need of interventional radiologists, Drs. Conca and Edwards agreed that Geisinger would create a four (4) year program for Dr. Edwards that would meet the ABR requirements.  (*Id*. ¶¶ 13-14.)  It was further agreed that Dr. Edwards would be given a medical staff appointment at Geisinger Medical Center.  (*Id*. ¶ 14.) Upon agreeing to this program, Dr. Conca communicated with the ABR, notifying them that Dr. Edwards was committed to a four (4) year program.  (*Id*. ¶ 15.)  In a letter to Dr. Edwards, dated July 5, 2006, Dr. Conca stated that Edwards' board certification would proceed as described by the ABR and that Dr. Edwards would be granted four (4) to six (6) years from the date of employment to obtain board certification.  (*Id*. ¶ 16; July 5, 2006 Letter to Edwards from Conca, Doc. 1, Ex 2.)  Dr. Edwards further alleges that both he and Geisinger entered into their employment relationship with the understanding that they were entering into an agreement for a minimum of four (4) years.  (*Id*. ¶ 21.)  Edwards alleges that due to this agreement, during the term of the contract, his employment could only be terminated for cause.  (*Id*. ¶ 23.)

At the time of his employment, Geisinger assisted Dr. Edwards in securing an H1B visa.  (*Id*. ¶ 18.)  This is a visa that is valid for three (3) year periods, subject to renewal for an additional three years.  (*Id*.)  Dr. Edwards H1B visa is conditioned on his continued employment with his visa sponsor, Geisinger.  (*Id*. ¶ 19.)  Dr. Edwards cannot work for

another employer under this visa, and if his employment with Geisinger is terminated, he is required to leave the United States within forty-eight (48) hours.  (*Id.* ¶ 20.)

At the time Dr. Edwards initiated his employment with Geisinger, his fiancé (now wife) was employed at Morgan Stanley in the United Kingdom.  (*Id.* ¶ 24.)  Understanding that Dr. Edwards' agreement with Geisinger would keep him in the United States for a minimum of four years, his wife arranged to relocate her employment to the United States, and obtained an L1 visa at her employer's cost.  (*Id.* ¶ 25.)  Relying on the terms of the agreement between Dr. Edwards and Geisinger, Dr. Edwards' wife made a contractual agreement to remain in her United States-based position until January 31, 2009. (*Id.* ¶ 28.)

Dr. Edwards alleges that, during his employment with Geisinger, the interventional radiology division has been shorthanded and understaffed.  (*Id.* ¶ 31.)  Despite the department's difficulties in meeting the demands of its patients, Dr. Edwards consistently received favorable performance appraisals, and in March of 2008 received an appraisal rating his clinical skills as meeting or exceeding expectations in all areas. (*Id.* ¶¶ 32-33; Annual Professional Staff Review 1/1/2007-12/21/2007, Doc. 1, Ex. 4.)

According to Dr. Edwards, in late May 2008, a representative of Geisinger accused Dr. Edwards of dissuading candidates from taking positions with Geisinger.  (*Id.* ¶ 34.)  Dr. Edwards denies making any such statements.  (*Id.* ¶ 35.)  In a letter dated May 30, 2008 from Richard Merkle, Geisinger's Chief Human Resource Officer, Dr. Edwards was notified that he has been involuntarily terminated, effective May 28, 2008, that he had a right to request a hearing and review of this termination in accordance with Geisinger Human Resources policy No. 440, and that his termination was converted to a suspension for up

3

to thirty (30) days during which Geisinger expected to resolve the hearing and review process. (*Id.* ¶ 36; May 30, 2008 Letter to Edwards from Merkle, Doc. 1, Ex. 5.)  Dr. Edwards alleges that Geisinger has never suggested that it had good cause for terminating his employment. (*Id.* ¶ 37.)  Since May 30, 2008 to the present, Dr. Edwards has remained on suspension with pay from Geisinger.  (*Id.* ¶ 39.)  In July 2008, Geisinger offered to reinstate Dr. Edwards and he accepted that offer.  (*Id.* ¶ 40.)  Upon accepting this reinstatement, Dr. Edwards, through his counsel, asked Geisinger if he could defer his return to work in order to deal with a family medical emergency in the United Kingdom.  (*Id.* ¶ 41.)

Dr. Edwards alleges that Geisinger neither granted nor denied the request, but rather rescinded the offer to reinstate Dr. Edwards and insisted that the hearing and review process pursuant to Geisinger Human Resources policy No. 440 proceed without further delay. (*Id.* ¶ 42.)  Dr. Edwards further alleges that during this hearing and review process, Geisinger did not allow him to have counsel present during an interview, and did not allow counsel to question witnesses or present arguments on Dr. Edwards' behalf.  (*Id.*)  Dr. Edwards alleges that this was part of a plan to control the hearing and review process, thereby biasing the result of that process. (*Id.*)  He further alleges that there are no guidelines, standards or procedures governing the conduct of the appeal and review process and that the process is left to the unfettered discretion of the participants, none of whom have any legal training or expertise. (*Id.*)  Dr. Edwards represents that he abided by Geisinger Human Resources policy No. 440 only because he believed that he had no choice but to do so or lose his right to challenge his termination with Geisinger.  (*Id.* ¶ 44.)

4

And finally, Dr. Edwards states that he has, at all times, been ready, willing and able to return to work at Geisinger and perform the functions of his position.  (*Id.* ¶ 45.)

Dr. Edwards filed his Complaint with this Court on September 4, 2008 (Doc. 1) along with a Motion for a Temporary Restraining Order (Doc. 2).  In this Complaint, Dr. Edwards articulates three counts against Defendant Geisinger Clinic.  Count I alleges a breach of Dr. Edwards' employment contract by Geisinger and seeks declaratory relief; Count II alleges a breach of Dr. Edwards' contract for reinstatement by Geisinger and seeks specific performance of that contract; and Count III seeks preliminary injunctive relief against Geisinger's pending termination of Dr. Edwards' employment and salary.  On September 8, 2008, the Court denied Dr. Edwards' motion seeking a temporary restraining order (Doc. 5), and on September 12, 2008, Dr. Edwards informed the Court and counsel for the Defendant that he withdrew his motion for preliminary injunction (Count III), without prejudice  (Doc. 9).  The Court confirmed this withdrawal in an Order dated September 15, 2008.  (Doc. 10.)  On November 11, 2008, Defendant Geisinger Clinic filed a Motion to Dismiss (Doc. 12) the remaining two counts of Plaintiff's Complaint, and on November 18, 2008, filed an accompanying Brief in Support (Doc. 13).  Dr. Edwards filed a Brief in Opposition to Defendant's motion on December 8, 2008. (Doc. 14.)  Defendants did not file a brief in reply.  Accordingly, Defendants motion has been completely briefed and is currently ripe for disposition.

## LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted.  Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint,

Plaintiff has not plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), meaning, enough factual allegations "to raise a reasonable expectation that discovery will reveal evidence of" each necessary element. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008); *see also Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (requiring complaint to set forth information from which each element of a claim may be inferred).  In light of Federal Rule of Civil Procedure 8(a)(2), the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200 (2007) (per curiam).  "[T]he factual detail in a complaint [must not be] so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8." *Phillips*, 515 F.3d at 232; *see also Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007).

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint and matters of public record.  *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993), *cert. denied*, 510 U.S. 1042 (1994).  The Court may also consider "undisputedly authentic" documents where the plaintiff's claims are based on the documents and the defendant has attached a copy of the document to the motion to dismiss.  *Id.*  The Court need not assume that the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 (3d Cir. 1998), nor credit a complaint's "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997).

6

When considering a Rule 12(b)(6) motion, the Court's role is limited to determining whether the plaintiff is entitled to offer evidence in support of the claims. *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). The Court does not consider whether the plaintiff will ultimately prevail. *See id.* The defendant bears the burden of establishing that the plaintiff's complaint fails to state a claim upon which relief can be granted. *See Gould Elecs. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000).

## DISCUSSION

## I.   Applicable Substantive Law

The Court has subject matter jurisdiction in the current case due to the diverse citizenship of the parties involved. 28 U.S.C. 1332(a)(2). Therefore, Pennsylvania substantive law shall be applied in this case. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938).

## II.   Count I - Breach of Employment Contract

Defendants argue that Dr. Edwards' breach of contract claim (Count I) fails because he was an at-will employee. "In Pennsylvania, 'the employment relationship is presumed to be at-will unless the employee can overcome that presumption with evidence of definite and specific terms of employment concerning length of employment or cause for termination.'" *Viloanti v. Emery Worldwide*, 847 F. Supp. 1251, 1258 (M.D.Pa. 1994) (McClure, J.) (quoting *Engstrom v. John Nuveen & Co., Inc.*, 668 F. Supp. 953, 957 (E.D.Pa. 1987)).

> The presumption may be overcome by express contract, implied in-fact contract (that is, the surrounding circumstances of the hiring may indicate that the parties did not intend it to be at-will), and additional consideration passing from the employer (that is, if the employee bestows a legally sufficient benefit

or incurs a sufficient detriment for the benefit of the employer beyond the services for which he was hired, a court may infer that the parties intended to overcome the at-will presumption).

*Id.* (quoting *Scott v. Extracorporeal, Inc.*, 376 Pa. Super. 90, 545 A.2d 334, 336 (Pa. Super. 1988)).  "Great clarity is necessary to contract away the at-will presumption."  *Greene v. Oliver Realty, Inc.*, 363 Pa. Super. 534, 551, *allocatur denied*, 517 Pa. 607 (1987).  "The clearest manner in which a party can overcome the at-will doctrine is where the employer and the employee have entered into a contract which expresses a definite term of employment and forbids discharge in the absence of "just cause" or without first utilizing an internal dispute resolution mechanism."  *Rutherfoord v. Presbyterian-University Hospital*, 417 Pa. Super. 316, 324 (Pa. Super. Ct. 1992).

Accordingly, in the context of Defendant's Motion to Dismiss, the question currently before the Court is whether the Plaintiff's Complaint has made sufficient allegations of fact to raise a reasonable expectation that discovery will reveal evidence rebutting the presumption that Dr. Edwards was an at-will employee of Geisinger.  Plaintiff's Complaint, along with documents attached to the Complaint as exhibits, makes several allegations relevant to this question.  Notably, Dr. Edwards alleges that Dr. Conca, a department head at Geisinger, represented to the American Board of Radiologists that "Geisinger was committed to a four year program by which Dr. Edwards would meet the Board's requirement."  (Compl., Doc. 1, ¶ 15.)  Furthermore, Dr. Edwards has provided the Court with a letter from Dr. Conca to Dr. Edwards stating that Dr. Edwards would "be granted 4-6 years from the date of employment to become board certified in view of the prescriptive measures provided by the American Board of Radiology. . .."  (July 5, 2006 Letter to Edwards from Conca, Doc. 1, Ex 2.)

8

The allegations in Dr. Edwards' Complaint certainly do not satisfy the high burden required to rebut the at-will employment presumption employed by Pennsylvania Courts, but at this early stage of litigation, the "notice pleading" requirement of Federal Rule of Procedure 8 and relevant interpretive case law, including the Supreme Court's *Twombly* and *Erickson* decisions, require that Dr. Edwards need only provide Geisinger with notice of his claim and the grounds upon which it rests. Furthermore, the Court believes that the allegations in the Complaint are sufficient to create a reasonable expectation that discovery in this case–which would, presumably, include depositions of Dr. Conca and productions of documents, including correspondence between Geisinger and the ABR–will reveal evidence that Dr. Edwards and Geisinger had more than an at-will employment relationship. Accordingly, the Court will deny Defendant's motion with respect to Count I.

### III.    Count II-Breach of Contract for Reinstatement

Defendant Geisinger Clinic presents two arguments in favor of dismissing Count II of Plaintiff's Complaint, which seeks specific performance of the July 2008 offer of reinstatement. First, Geisinger argues that the alleged promise of reinstatement is unenforceable for lack of mutuality of obligation. In the alternative, Geisinger argues that Dr. Edwards possesses an adequate remedy at law and reasonably ascertainable damages, a situation where Pennsylvania courts deny specific performance remedies. And as a final alternative, Geisinger argues that the reinstatement agreement was a personal services agreement and that Pennsylvania law prohibits courts from granting specific performance of such agreements. While noting Geisinger's first two arguments concerning mutuality of obligation, damages and appropriate remedies, the Court observes that Geisinger's third argument questions whether this Court has the ability to grant the relief Dr.

Edwards seeks in Count II of his Complaint.  Since a finding that the Court is unable to provide the relief requested in Count II would predominate over the other two arguments, the Court will first determine if Pennsylvania law prohibits courts from ordering specific performance of personal services contracts.

"[U]nder Pennsylvania law, 'a court of equity will not grant specific performance of a contract for personal services." *Nicholas v. Pennsylvania State University*, 227 F.3d 133, 146 (3d Cir. 2000) (quoting *McMenamin v. Philadelphia Transportation Co.*, 356 Pa. 88, 51 A.2d 702, 703 (Pa. 1947)).  Noting that Plaintiff's Complaint and supporting documents allege that Dr. Edwards and Geisinger entered into an employment contract, Defendants, accordingly, argue that Dr. Edwards is not entitled to specific performance of this alleged contract for personal services.  (Def.'s Br. in Supp., Doc. 13, at 19-20.)

In response, Plaintiff argues that the *McMenamin* decision, upon which *Nicolas* was based, is "clearly no longer good law" since courts applying Pennsylvania law regularly order reinstatement of employees who were improperly discharged.  (Pl.'s Br. in Opp., Doc. 14, at 19.)  In support of this argument, Plaintiff cites to the Pennsylvania Supreme Court's decision in *Pennsylvania State Police v. Pennsylvania State Troopers Association*, 559 Pa. 586, 741 A.2d 1248 (Pa. 1999), a case where the court affirmed the decision of an arbitrator reinstating two police officers after they had been fired for off-duty criminal conduct. Similarly, Plaintiff cites to the Commonwealth Court of Pennsylvania's decision in *County of Mercer v. Teamsters Local 250*, 946 A.2d 174 (Pa. Commw. Ct. 2008), a case where the court reversed an arbitration award and reinstated a prison guard accused of falsifying reports and other improper conduct.  Having reviewed each of the cited cases, the Court

10

believes that the current case is unique and distinguishable from both the *Pennsylvania State Troopers* and *Teamsters Local* cases.

In *Teamsters Local*, a union filed a grievance on behalf of a prison guard who had been terminated for cause.  This grievance was processed through a contractual grievance procedure and, ultimately, submitted to arbitration where a decision was reached in favor of the prison guard.  A trial court vacated and reversed the arbitrator's award.  Accordingly, the question presented to the Commonwealth Court of Pennsylvania was whether the "trial court erred as a matter of law in apply the extremely narrow scope of judicial review of a labor arbitration award. . .." *Teamsters Local 250*, 946 A.2d, at 178.  In its analysis, the court noted that "factfinding exceeds the authority of a court reviewing an arbitration award" and that it was the "arbitrator's role to interpret the terms of the [collective bargaining agreement]." *Id.* at 183.  Ultimately finding that the "Arbitrator's award was rationally derived from and drew its essence from the [collective bargaining agreement] and did not violate public policy," the court reinstated the arbitrator's award, thereby reinstating the prison guard to his former position.

Similarly, in *Pennsylvania State Troopers*, a case arising after two police officers committed off-duty crimes and were subsequently terminated from their positions, the court confronted a question of "what is the proper scope of review of an appeal from an [statutorily enacted] grievance arbitration award." *Pennsylvania State Troopers*, 559 Pa., at 591.  The court's analysis focused on the various policy considerations leading to the Pennsylvania legislature's statutory adoption of employment grievance procedures for police and fire personnel, *Id.* at 591-92, and the appropriate role for courts reviewing

11

arbitration decisions arising out of this process, *Id.* at 592-593.  The court took particular care to note that its decision was not about whether it agreed with the arbitrator's decision to reinstate the two police officers, and stated that the questions presented specifically "concern the application of existing legislation."  *Id.* at 594.

While the outcome of both cases resulted in the reinstatement of previously-terminated employees, these cases do not support the proposition that Pennsylvania courts may simply order specific performance of contacts for personal services.  Rather, each case addresses the proper scope of judicial review of arbitrators' decisions resulting from either contractually- or statutorily-established employment grievance procedures.  While the case currently before the Court does involve an on-going employment grievance review, it does not present an issue involving the outcome and appropriateness of an arbitrator's decision arrived at through a negotiated and agreed upon grievance procedure.  Accordingly, finding no authority suggesting *McMenamin*'s clear statement that "a court of equity will not grant specific performance of a contract for personal services," 356 Pa., at 91, is no longer good law, the Court finds that it is unable to grant the relief Dr. Edwards requests in Count II of his Complaint.  For this reason, the Court will grant Defendant's motion with respect to Count II of Plaintiff's Complaint.

## IV.   Counsel Fees

Finally, Defendant argues that this Court should dismiss Plaintiff's requests for counsel fees because there is no expressly provided statute or agreement between the parties providing for fee shifting. (Def.'s Br. in Supp., Doc. 13, at 20.) Defendants support this argument by citing to *Corace v. Balint*, which states that "'[o]ver and over again [the

Pennsylvania Supreme Court has] decided there can be no recovery for counsel fee from the adverse party to a cause, in the absence of express statutory allowance of the same. . .' or clear agreement by the parties, or some other established exception." 418 Pa. 262, 271 (1965) (quoting *Smith v. Equitable Trust Co.,* 215 Pa. 413, 417 (1906); citing *Fidelity-Philadelphia Trust Company v. Philadelphia Transportation Company*, 404 Pa. 541, 548 (1961); *Hempstead v. Meadville Theological School*, 286 Pa. 493 (1926)).

Plaintiff responds that he "seeks only the right to ask for such remedy, depending on the outcome of this litigation, if equitable considerations so require." (Pl.'s Br. in Opp., Doc. 14, at 22.)  Plaintiff further notes that "federal courts, in the exercise of their equitable powers, may award attorneys' fees when the interests of justice so require."  *Hall v. Cole*, 412 U.S. 1, 4-5 (1973) "The power to award such fees 'is part of the original authority of the chancellor to do equity in a particular situation,' and federal courts do not hesitate to exercise this inherent equitable power whenever 'overriding considerations indicate the need for such a recovery.'" *Id.* at 5 (quoting *Sprague v. Ticonic National Bank*, 307 U.S. 161, 166 (1939); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-392 (1970); citing *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 718 (1967)).

Examining Plaintiff's Complaint, the Court finds that Dr. Edwards has made allegations of fact with respect to Count I to raise a reasonable expectation that the Court may, with the benefit of additional facts elicited through discovery, exercise its equitable authority and award attorneys fees.  Accordingly, the Court will deny Defendant's motion to strike Plaintiff's demand for attorneys' fees in connection with Count I of the Complaint.

**CONCLUSION**

For the reasons detailed above, the Court will (1) deny Defendant's motion to dismiss Count I of Plaintiff's Complaint, (2) grant Defendant's motion to dismiss Count II of Plaintiff's Complaint, and (3) deny Defendant's motion to strike Plaintiff's request for attorneys' fees. Plaintiff's Count I claim for breach of employment contract is the only claim remaining in this case.

An appropriate order follows.


 March 6, 2009                                    /s/ A. Richard Caputo
Date                                             A. Richard Caputo
                                                 United States District Judge

14

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

PHILIP EDWARDS, M.D.,

     Plaintiff,

        v.

GEISINGER CLINIC,

     Defendant.

CIVIL ACTION No. 3:08-CV-1653

(JUDGE CAPUTO)

**ORDER**

    Now, this _6th_ day of March, 2009, it is **HEREBY ORDERED** that Defendant's Motion to Dismiss (Doc. 12) is **GRANTED** in part and **DENIED** in part as follows:

(1)    Defendant's motion to dismiss Count I of Plaintiff's Complaint is **DENIED**.

(2)    Defendant's motion to dismiss Count II of Plaintiff's Complaint is **GRANTED**.

(3)    Defendant's motion to strike Plaintiff's request for attorneys' fees is **DENIED**.

            /s/ A. Richard Caputo
            A. Richard Caputo
            United States District Judge